FILED
Jul 21, 2026
11:22 AM(CT)
TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Kathy M. Goad | Docket No. 2023-05-7741 |
| v. | State File No. 73552-2023 |
| Capstone Logistics, LLC, et al. | |
| Appeal from the Court of Workers' Compensation Claims Dale A. Tipps, Judge | |

---

### Affirmed and Remanded

---

Both the employee and the employer take issue with the trial court's order in this interlocutory appeal. The employee injured her back at work, and the employer provided certain workers' compensation benefits, including authorized medical care. The employer later declined to approve a surgery recommended by the authorized provider after that physician opined that her need for the surgery was not primarily related to her work injury and placed her at maximum medical improvement for her work-related condition. The employee sought unauthorized treatment from another provider, who opined that her work accident was primarily responsible for the advancement of her pre-existing condition and the need for surgery. After an expedited hearing, the trial court issued an order finding that the employee's expert medical proof on medical causation was sufficient to overcome the statutory presumption afforded to the authorized provider and ordered treatment, including surgery as recommended, with the authorized provider. However, the court denied the employee's request for additional temporary disability benefits, finding that she had been placed at maximum medical improvement and had presented no proof that this determination was premature or incorrect. Both parties have appealed. Having carefully reviewed the record, we affirm the trial court's order in all respects and remand the case.

Judge Pele I. Godkin delivered the opinion of the Appeals Board in which Presiding Judge Timothy W. Conner and Judge Meredith B. Weaver joined.

Ryan A. Mirian, Nashville, Tennessee, for the employer, Capstone Logistics, LLC

R. Steven Waldron, Murfreesboro, Tennessee, for the employee, Kathy M. Goad

**Factual and Procedural Background**

On September 27, 2023, Kathy M. Goad ("Employee") was packing cookies while working as a "selector" for Capstone Logistics, LLC ("Employer") when a towmotor pushed a pallet into the back of her legs. Employee fell backwards and landed on the pallet, and she immediately reported back pain. She told her supervisor about the incident and was seen at an urgent care clinic that same day where she was evaluated by a physician's assistant. Employee provided a history of having sustained a back injury several years prior. The physician's assistant prescribed medications and assigned light-duty restrictions. Employee was ultimately referred for an orthopedic evaluation, and Employer provided Employee a panel of specialists. However, her first two selections from the panel declined to see her; as a result, Employee selected Dr. John R. Burleson.[1]

Employee first saw Dr. Burleson in January 2024 and described immediate, sharp pain in her back when "she was hit by a tow[]motor" at work. She reported radicular symptoms in her leg, and an MRI revealed grade 1 spondylolisthesis at L4-5, which Dr. Burleson stated "was made worse with her accident." Dr. Burleson continued Employee's restrictions and recommended epidural steroid injections. Due to Employee's continued pain, Dr. Burleson recommended a lumbar fusion due to "significant radiculopathy."

Following his surgical recommendation, Employer sent Dr. Burleson a medical questionnaire inquiring as to whether Employee's spine condition was more than 50% related to her work accident. In response, Dr. Burleson marked "no" and explained that, although some of Employee's symptoms, including her back pain, were related to her accident, her "potentially needing a fusion is [greater than] 51% related to the natural history of her chronic degenerative condition." Although he had opined the recommended lumbar fusion was not causally related to the work injury, he continued to recommend the surgery as medically necessary to address Employee's complaints. In a follow-up visit of January 2025, Dr. Burleson noted that he believed Employee "had a work injury which made her chronic back condition symptomatic." He eventually placed Employee at maximum medical improvement ("MMI") for her work-related condition on March 11, 2025, and assigned a 3% permanent impairment rating with no permanent restrictions based on the results of a functional capacity evaluation.

In June 2025, Employer sent another medical questionnaire to Dr. Burleson asking if he still believed Employee's need for the lumbar fusion surgery was not more than 50% related to her work accident. Dr. Burleson responded "yes" and also opined that none of

---

[1] Employee initially selected Dr. Ryan D. Snowden from the panel and then Dr. Julian Lugo-Pico, both of whom declined to see her. The record reflects that Employee then selected Dr. Burleson without asking that the physicians who declined to see her be replaced on the panel. Thereafter, Employee accepted treatment from Dr. Burleson. Neither party has raised as an issue whether the panel was valid under these circumstances.

Employee's future medical treatment for the low back was more than 50% related to the work injury.

On May 12, 2025, Employee sought unauthorized treatment with Dr. Melvin D. Law, Jr., an orthopedic surgeon, who diagnosed Employee with spondylolisthesis at L4-5 with significant moderate to severe lateral recess stenosis. He, too, recommended a lumbar fusion. In response to a letter from Employee's attorney, Dr. Law wrote that, because Employee had denied experiencing low back pain before her work accident, she likely sustained an annular tear following the work incident that caused her spondylolisthesis to become unstable and resulted in her becoming symptomatic. Dr. Law also executed a Standard Form Medical Report (Form C-32) in which he described the mechanism of injury as a "fall after being hit by a tow[]motor at work." Dr. Law opined that Employee's pre-existing condition and her need for treatment were primarily caused by the work accident.

During his deposition, Dr. Burleson testified that, after viewing a video of the work incident, his causation opinion remained unchanged, observing that the incident was actually "less violent" than he originally believed. He explained that he relied on the history provided by Employee and that his review of the video did not change his opinion that Employee's need for a fusion was not more than 50% related to her work injury. When questioned about Dr. Law's belief that Employee likely suffered an annular tear, Dr. Burleson testified that he considered such a theory speculation and noted the MRI did not indicate such a tear.

On cross-examination, Dr. Burleson was questioned about a January 14, 2025 note in which he reiterated that the primary reason for Employee's back surgery is her chronic low back condition, not her work injury. However, Dr. Burleson also testified that the work incident is responsible for more than 50% of the symptoms Employee experienced post-injury and her immediate treatment. When questioned in this regard, Dr. Burleson testified:

Q: Again, asymptomatic before the accident, right?

A: Yes, sir.

Q: Immediately became symptomatic, correct?

A: Correct.

Q: Symptomatic because of the aggravation of a pre-existing condition?

A: I think that's fair to say.

Q: And it was only the accident that aggravated the pre-existing condition, right?

A: That I'm aware of, yes, sir.

Q: Okay. So[,] 100 percent of the aggravation of the pre-existing condition was the work accident?

A: I believe that's correct.

Employee was the only witness to testify in person at the expedited hearing. Employee acknowledged that she had suffered a prior injury with a previous employer sometime before 2005 that resulted in pain in both shoulders. She received medical treatment through her private insurance and testified that she received no surgery, injections, or physical therapy for this injury. She also testified that, although she worked some period of light duty, she had returned to full duty and her symptoms gradually resolved. Employee further testified that she was never placed on any permanent restrictions and has not had any problems related to that injury for 20 years.

In her capacity as a "selector" for Employer, Employee packed cookies and biscuits on a production line for years before her injury. She testified she had no lumbar spine symptoms, injuries, or limitations while working there until the accident in September 2023. Following the work incident and while receiving medical treatment, Employee continued working light duty until October 1, 2024, when Employer could no longer accommodate her restrictions. Employee then received full temporary disability benefits until Dr. Burleson determined she had achieved MMI on March 11, 2025. Employee testified that she had not worked anywhere since then and that her condition had worsened. Employee requested an order requiring Employer to designate Dr. Law as the authorized physician and to authorize him to perform the recommended surgery and provide continuing medical treatment. She also contended she was entitled to additional temporary total disability benefits beginning as of March 11, 2025.[2]

Conversely, Employer asserted it furnished or paid all benefits to which Employee was entitled. It relied on Dr. Burleson's causation opinion, which it argued is presumptively correct, that her current symptoms and need for surgery were not primarily caused by her work accident.[3] Employer also argued that Employee is not entitled to additional temporary disability benefits because she had not shown that Dr. Burleson's opinion placing her at MMI was premature or incorrect.

---

[2] Employee also requested payment of additional temporary partial disability benefits for the period she worked light duty. Following the hearing, the parties notified the court that they had resolved this issue.

[3] Within the context of this appeal, whether Dr. Burleson's causation opinion was entitled to a presumption of correctness in light of the manner in which he was selected from a panel has not been raised.

Following the hearing, the trial court ordered Employer to provide medical treatment made reasonably necessary by Employee's September 27, 2023 injury, including the surgery recommended by Dr. Burleson. The court also determined that Dr. Burleson should remain her authorized provider. The court noted that, although the parties disagreed as to whether Employee's work accident was the primary cause of the aggravation of her pre-existing diagnosed spondylolisthesis, they both agreed that *Edwards v. Peoplease, LLC*, No. W2024-01034-SC-R3-WC, 2025 Tenn. LEXIS 514 (Tenn. Dec. 22, 2025) is controlling. The trial court observed that, in order to prove a compensable aggravation of a pre-existing condition, the Tennessee Supreme Court has provided the following framework for analysis:

> For aggravation injuries, the claimant must show, to a reasonable degree of medical certainty, that the aggravation primarily arose out of and in the course and scope of employment. This requires the employee to demonstrate that the employment contributed more than fifty percent in causing the aggravation. Finally, the employee must establish that the aggravation of the pre-existing condition contributed more than fifty percent in causing the death, disablement, or need for medical treatment, to a reasonable degree of medical certainty. Further, the "opinion of the treating physician, selected by the employee from the employer's designated panel of physicians . . . shall be presumed correct on the issue of causation," but the employee can overcome this presumption "by a preponderance of the evidence."

*Id.* at *23-24. Moreover, an "aggravation means an intensification or worsening of a pre-existing disease, condition or ailment, permanent or not, that contributes more than fifty percent in causing death, disability[,] or the need for medical treatment." *Id.* at *26.

As a result, the court here determined Employee must come forward with sufficient evidence to show a likelihood of proving at trial that the work accident contributed more than fifty percent in causing the aggravation and that the aggravation contributed more than fifty percent to her disablement and/or the need for medical treatment. The trial court noted that, under a plain reading of *Edwards*, any *intensification* that is more than 50% the cause of the need for treatment is a compensable aggravation. The court also noted there was no proof in the record that the symptoms associated with her previous work injury were related to her current ailments or that she had experienced any such symptoms in years. Although the court found Employee to be a "poor historian," it found her "generally credible." Further, it concluded that the video of the incident supported the "main points" of her testimony regarding the mechanism of injury.

With regard to the opposing medical opinions, the court noted that, despite his ultimate causation opinion, Dr. Burleson nevertheless affirmed that Employee became symptomatic after the work accident aggravated her pre-existing condition, and he agreed

that the work incident was the *only cause* of her aggravation, which, in turn, caused the need for surgery. Relying on *Caskey v. Powers Pizza, LLC,* the court noted the significance of Employee's unrefuted testimony that she was asymptomatic prior to the work incident. *Caskey v. Powers Pizza, LLC,* No. 2015-04-0038, 2015 TN Wrk. Comp. App. Bd. LEXIS 37, at *9 (Tenn. Workers' Comp. App. Bd. Oct. 7, 2015) (stating that testimony of a lay witness can influence the trier of fact's assessment of expert medical proof). As a result, in applying the *Edwards* standard to the facts of this case, the trial court concluded Employee is likely to prove at trial that the need for the surgery recommended by Dr. Burleson was more than fifty percent (50%) caused by the aggravation of her pre-existing degenerative condition.

As for her request that Dr. Law be designated her authorized treating physician, the court emphasized that Employer did not deny Employee's claim and furnished a medical panel and authorized treatment. Although Employer later denied the recommended surgery, it did so based on the authorized doctor's own causation opinion. Thus, the court concluded that Dr. Burleson had not declined to treat Employee and that she was not entitled to a change of physicians. The court also denied Employee's request for temporary disability benefits, finding she has presented no evidence that she has been taken off work by a physician for a subsequent period of time or that Dr. Burleson's opinion placing her at MMI was premature or incorrect. Both parties have appealed.

**Standard of Review**

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2025). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "when it comes to deposition testimony, an appellate panel is in the same position as the trial court to make credibility determinations." *Edwards v. Peoplease, LLC*, No. W2024-01034-SC-R3-WC, 2025 Tenn. LEXIS 514, at *18 (Tenn. Dec. 22, 2025). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2025).

**Analysis**

In its notice of appeal, Employer asserts the trial court erred in finding that: (1) Employee's expert medical proof was sufficient to overcome the statutory presumption

of correctness afforded to Dr. Burleson; (2) the lumbar fusion is primarily related to the reported work injury, and (3) Employee was a credible witness in light of the record as a whole. For her part, Employee asserts the trial court erred in finding she was not entitled to additional temporary disability benefits because there was no evidence she was prematurely placed at MMI by Dr. Burleson.[4]

*Medical Causation*

Employer first asserts that the trial court erred in finding Dr. Law's causation opinions overcame the presumption of correctness accorded to Dr. Burleson as the authorized treating physician. In considering conflicting expert medical opinions, a court may consider "the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts." *Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672 (Tenn. 1991). However, we are charged with reviewing documentary evidence, including expert deposition testimony, de novo. *See Edwards*, 2025 Tenn. LEXIS 514, at *18. Thus, when the trial court's determination is challenged on appeal, we must determine where the preponderance of the evidence lies. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2025).

Here, we conclude the trial court did not err in accrediting the opinions of Dr. Law over those of Dr. Burleson. As noted above, despite his ultimate causation opinion, Dr. Burleson agreed that the work accident caused Employee to become symptomatic and that the accident aggravated her pre-existing condition. Further, as the trial court noted, Dr. Burleson agreed that the work accident was the *sole cause* of the aggravation of her pre-existing condition. As stated in *Edwards*,

> An aggravation injury could cause the need for medical treatment without resulting in an anatomical change or permanent worsening of a condition. For example, an aggravation injury could arise out of and in the course and scope of employment yet ultimately resolve through medical treatment. If medical treatment resolves the aggravation, that aggravation is definitionally not permanent, yet may still be compensable. Simply put, as used in the 2013 Reform Act, aggravation means an intensification or worsening of a pre-existing disease, condition or ailment, permanent or not, that contributes more than fifty percent in causing death, disability or the need for medical treatment.

*Id.* at *26. Although Dr. Burleson ultimately opined that Employee's need for surgery was more than 50% caused by her pre-existing degenerative condition, and Employer asserts that the trial court erred because it "neglected the second portion of the *Edwards* analysis,"

---

[4] Employee did not appeal the trial court's decision not to compel authorization of Dr. Law as her authorized treating physician moving forward.

Employer concedes some treatment was necessary to get Employee back to baseline. It disagrees, based in part on Dr. Burleson's opinion, that the nature of the treatment that would "return Employee to baseline" includes the surgical fusion.

We disagree. The record is clear that Dr. Burleson said on multiple occasions that the work accident triggered Employee's symptoms, aggravated her pre-existing condition, and was at least part of the reason she needed surgery. Further, the lay testimony and other evidence supports the conclusion that Employee's symptoms were caused by the work accident; namely, her testimony that she was asymptomatic prior to the work incident was unrefuted, and she testified to working for Employer on a production line without any physical restrictions or limitations. In addition, Dr. Law opined that, given the development of her symptoms after the work accident, Employee likely sustained an annular tear, which caused her spondylolisthesis to become unstable and symptomatic. Ultimately, the trial court determined that Dr. Law provided the more probable explanation of Employee's need for medical treatment and the advancement of her pre-existing condition, and we agree with that assessment. As stated by the Court in *Edwards,* "[p]ut simply, [the employee] only became eligible for . . . surgery once she became symptomatic, and she only became symptomatic after the accident aggravated her pre-existing [condition]." *Id.* at *32. In short, the evidence does not preponderate against the trial court's determination that Employee will likely prevail at trial in establishing her entitlement to the recommended surgery.

*Credibility of Employee*

Next, Employer asserts that the trial court erred in finding Employee's testimony credible. As we have previously explained, "When the trial court has heard in-court testimony, considerable deference must be afforded in reviewing the trial court's findings of credibility and assessment of the weight to be given to that testimony." *Sirkin v. Trans Carriers, Inc.*, No. 2015-08-0292, 2016 TN Wrk. Comp. App. Bd. LEXIS 22, at *8-9 (Tenn. Workers' Comp. App. Bd. May 9, 2016) (quoting *Tryon v. Saturn Corp.*, 254 S.W.3d 321, 327 (Tenn. 2008)). "Appellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary. In order for evidence to be clear and convincing, it must eliminate any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hernandez v. Jones Fiber Products, LLC*, No. 2019-02-0046, 2020 TN Wrk. Comp. App. Bd. LEXIS 72, at *18 (Tenn. Workers' Comp. App. Bd. Dec. 28, 2020) (quoting *Kelly v. Kelly*, 445 S.W.3d 685, 692-93 (Tenn. 2014)). The trial court in this case heard lay and expert testimony; reviewed exhibits, including the video of the incident; and recognized and identified inconsistencies in Employee's testimony before concluding that, while perhaps a poor historian, Employee was a credible witness with respect to the essential elements of her claim. Employer has presented no evidence, much less clear and convincing evidence, that the trial court's credibility determinations were in error.

*Temporary Disability Benefits and Maximum Medical Improvement*

Turning to the issues raised by Employee on appeal, she asserts that the trial court erred in concluding she was not entitled to past and ongoing temporary disability benefits in light of the recommendation for lumbar fusion surgery. To establish an entitlement to temporary total disability benefits, Employee must prove: (1) that she was disabled from working due to a compensable injury, (2) that there is a causal connection between the compensable injury and her inability to work, and (3) the period of disability. *Simpson v. Satterfield*, 564 S.W.2d 953, 955 (Tenn. 1978). Further, temporary total disability benefits are terminated when an employee has reached maximum recovery. *Id.* Here, it is unrefuted that Employee was placed at MMI by the authorized treating physician on March 11, 2025. To date, she has presented no evidence that this designation was made prematurely or incorrectly or has been rescinded. *See, e.g.*, *Laymance v. K-VA-T Food Stores, Inc., d/b/a Food City*, No. 2024-30-5862, 2026 TN Wrk. Comp. App. Bd. LEXIS 2, at *10-11 (Tenn. Workers' Comp. App. Bd. Jan. 14, 2026) (authorized physician rescinded his previous MMI determination). Accordingly, the preponderance of the evidence supports the trial court's order in this regard.

## Conclusion

For the foregoing reasons, we affirm the trial court's order in its entirety and remand the case to the trial court. Costs on appeal are taxed equally to Employee and Employer.